WR-84,279-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/2/2015 5:14:20 PM
Accepted 12/3/2015 8:18:55 AM
ABEL ACOSTA
CLERK

No. _____

RECEIVED
COURT OF CRIMINAL APPEALS
12/3/2015
ABEL ACOSTA, CLERK

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

## In re Kevin Richard Joliet
Relator

## Application for Writ of Prohibition

Respectfully submitted by,

**Wes Ball**
Ball & Hase, P.C.
4025 Woodland Park Blvd., Suite 100
Arlington, Texas 76013
Email: WBnotices@ballhase.com
Tel. (817) 860-5000
Fax: (817) 860-6645
State Bar Card No. 01643100

Attorney for Relator

## Issue Presented

Whether a trial court may order a person on community supervision incarcerated and deprived of his liberty solely for failing a polygraph examination. Is such incarceration a violation of the individual's right to due process and due course of law as provided in the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Nineteen of the Texas Constitution?

## Identity of Parties and Counsel

Pursuant to the Rules of Appellate Procedure ("Tex. R. App. Pro.") the following is a complete list of the names and addresses of all parties to this cause so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case:

### Relator

**Kevin Richard Joliet**
c/o Wes Ball
Ball & Hase, PC
4025 Woodland Park Blvd., Suite 100
Arlington, Texas 76013

Represented by:

**Wes Ball**
Ball & Hase, PC
4025 Woodland Park Blvd., Suite 100
Arlington, Texas 76013

### Respondents

Honorable Mollee Westfall
Judge, 371st District Court
Tarrant County
Tim Curry Justice Center
401 W. Belknap Street
Fort Worth, Texas 76196-0201

# TABLE OF CONTENTS

ISSUES PRESENTED................................................................................i

IDENTIFY OF PARTIES AND COUNSEL ................................................ii

INDEX OF AUTHORITIES .................................................................iv, v

STATEMENT OF FACTS ......................................................................1

ARGUMENT AND AUTHORITIES.........................................................3

PRAYER...............................................................................................9

CERTIFICATE OF COMPLIANCE AND DELIVERY ...........................11

EXHIBIT A...........................................................................................12

# Index of Authorities

**Federal Cases:**

Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973)..................................................5

Morrissey v. Brewer, 408 U.S. 471 (1972)....................................................5, 6

U.S. v. Scheffer, 118 S.Ct. 1261 (1998)..........................................................4


**Texas Cases:**

Curry v. Wilson 853 S.W. 2d 40, 43-44 (Tex. Crim. App. 1993)..........................8

DeGay v. State, 741 S.W.2d 445, 449, 450 (Tex. Crim. App. 1987)......................5

Ex Parte Arnone, WR-60,218-02 (Tex. Crim. App. October 7, 2015)
(not designated for publication)..................................................................6

Leonard v. State, 385 S.W.3d 570 (Tex. Crim. App. 2012)................................2, 6

Romero v. State, 493 S.W.2d 206 (Tex. Crim. App. 1973)................................2, 6


**Constitution of the United States:**

United States Constitution, Sixth................................................................i, 3

United States Constitution, Fourteenth........................................................ i, 3, 6


**Constitution of Texas:**

Texas Constitution, Article 1, Section 19.........................................................9

Texas Constitution, Article 5, §5.................................................................14

Texas Constitution, Article V, §5(c)..............................................................9


**Texas Statutes And Codes:**

Texas Code of Criminal Procedure 42A.108(b)..................................................4

Texas Code of Criminal Procedure 42A.751(h) of the.........................................4

Texas Code of Criminal Procedure 9.4 (i)(3)...................................................11

Texas Code of Criminal Procedure Article 42.12 Sec. 21 (c)..................................2

Texas Code of Criminal Procedure Article 42.12, Sec. 21(c)..................................4

Tex. R. App. Proc, Rule 9.4(i)(1),. ...........................................................11

Tex. R. App. Proc, Rules 9.4(i)(2)(B) ........................................................11

Government Code, Section 508.281(e) ..........................................................4

**Index of Authorities** (cont.)

**Other Authorities:**
Adelson, R. (2004) ..................................................................................4
Board on Behavioral, Cognitive, and Sensory Sciences and Education (BCSSE) ...5
Committee on National Statistics (CNSTAT) (2003) .............................................5
National Academy of Sciences (NAS) issued a report entitled
 "The Polygraph and Lie Detection" ......................................................................5
United States National Research Council
 (Chapter 8: Conclusions and Recommendations, page 212) ....................................5

No. _____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

**In re Kevin Richard Joliet**
Relator

**Application for Writ of Prohibition**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, Kevin Richard Joliet ("Relator"), by and through his undersigned attorney, Wes Ball, complaining of the action of the Respondent, the presiding Judge of the 371st District Court of Tarrant County, Texas, the Honorable Mollee Westfall, and requests this Honorable Court to issue its writ of prohibition, directed to Respondent, and in support of such application would respectfully show the Court as follows:

**Statement of Facts**

Relator entered a plea of guilty pursuant to a plea bargain agreement on December 16, 2013 to the offense of injury to a child and was placed on five (5) years deferred adjudication probation. As a condition of probation, the Relator was ordered to attend and complete a course of sex offender treatment. The Relator is presently in compliance with all terms of his sex offender treatment. Undersigned counsel recently obtained probation conditions that were entered

1

while Relator was without counsel and were outside of counsel's knowledge. These supplemental probation conditions and amendments added conditions that Relator show no deception on polygraph tests. These amendments and supplemental conditions are contrary to the express language of Article 42.12 Sec. 21 (c) Texas Code Crim. Proc. A copy of these amendments including the unlawful condition are attached as "Exhibit A" to this application.[1] As these conditions are contrary to law, Relator through his attorney objects to these conditions.

As part of the sex offender probation conditions Relator has been required to submit to polygraph examinations and to show no deception. The Relator has taken approximately 16 of these examinations. The Relator has consistently failed the polygraph tests with the exception of one occasion. The failure has been on two issues. One issue is whether the Relator has viewed pornography. The other issue is whether the Relator has committed any new sex offenses. Relator denies having viewed pornography of any kind and has denied committing any new sex offenses. There is zero evidence from any source to establish that the Relator's statements of denial are untruthful other than the failed polygraph examinations. On a recent surprise visit by probation officers, Relator's computer and cellphone

---

[1]     The polygraph condition flies in the face of the operative statutory language and court opinions, e.g. Leonard v. State, 385 S.W.3d 570 (Tex. Crim. App. 2012) and Romero v. State, 493 S.W.2d 206 (Tex. Crim. App. 1973).

were seized and forensically examined. This search revealed that there was zero evidence to support any suspicion that Relator had viewed any pornography, confirming his earlier denials.

Despite the lack of any credible evidence that Relator has violated any condition of probation, Respondent advised undersigned counsel on November 30, 2015 that she will order Relator to be held in custody to be transmitted to an Intermediate Sanctions Facility upon bed space being available. Respondent advised that she will enter this order on December 4, 2015 and Relator will be taken into custody. Based on this proposed order, Relator will be deprived of his liberty for a period to exceed ninety days. Relator's employer will terminate his employment and his home will likely go into foreclosure. Respondent's proposed order deprives Relator of due process and due course of law provide in the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 19 of the Texas Constitution.

## Argument & Authorities

*Jurisdiction*:

The Texas Court of Criminal Appeals has jurisdiction of this Application for Writ of Prohibition under Article V, §5(c) of the Texas Constitution.

*Polygraph*:

Polygraph evidence, which is the sole basis of Relator's ordered incarceration is by statute a prohibited basis for finding a probation violation:

> Article 42.12, Sec. 21(c) Texas Code of Criminal Procedure: The court may not revoke the community supervision of a Relator if, at the community supervision revocation hearing, the court finds that the only evidence supporting the alleged violation of a condition of community supervision is the uncorroborated results of a polygraph examination.

See also 42A.108(b) and 42A.751(h) of the Texas Code of Criminal Procedure and Section 508.281(e) Government Code relating to parole. The use of polygraph evidence as a basis for legal decisions has been met with almost universal disfavor.

Polygraph evidence has met with disfavor largely on the basis of research on its validity. This research reports that polygraph results may be only slightly better than chance. Doubts about polygraph tests grew in the scientific community until the National Research Council – an organization of scientists – conducted a systematic evaluation and concluded that the test is lacking in scientific validity.[2] In 1998, the U.S. Supreme Court acted to restrict their use in legal proceedings.[3]

---

[2] Adelson, R. (2004). The polygraph in doubt. APA Monitor, 35, 71. http://www.apa.org/monitor/julaug04/polygraph.aspx

[3] U.S. v. Scheffer, 118 S.Ct. 1261 (1998).

4

In particular, defense attorneys can no longer use evidence that their client passed a polygraph test as establishing innocence of a crime. In 2003, the National Academy of Sciences (NAS) issued a report entitled "The Polygraph and Lie Detection". The NAS found that the majority of polygraph research was "unreliable, unscientific and biased", concluding that 57 of the approximately 80 research studies that the American Polygraph Association relies on to come to their conclusions were significantly flawed. These studies did show that specific-incident polygraph testing, in a person untrained in counter-measures, could discern the truth at "a level greater than chance, yet short of perfection". However, due to several flaws, the levels of accuracy shown in these studies "are almost certainly higher than actual polygraph accuracy of specific-incident testing in the field".[4] It is based on this dubious and discredited "junk" science that Respondent proposes to deprive Relator of his liberty in violation of his right to due process and due course of law.

A probationer is entitled to due process. Morrissey v. Brewer, 408 U.S. 471 (1972) *see also* Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) and DeGay v. State, 741 S.W.2d 445, 449, 450 (Tex. Crim. App. 1987). Relator asserts that any sanction imposed solely because of failing a polygraph examination denies that

---

[4]     Board on Behavioral, Cognitive, and Sensory Sciences and Education (BCSSE) and Committee on National Statistics (CNSTAT) (2003). "The Polygraph and Lie Detection". United States National Research Council (Chapter 8: Conclusions and Recommendations, page 212)

person due process in violation of both <u>Morrissey v. Brewer</u>, and the Fourteenth Amendment of the United States Constitution. If Respondent follows through on her plan to incarcerate Relator and send him to an Intermediate Sanction Facility, Relator's rights to due process will be violated because he will be deprived of his valuable liberty interest solely for failing to pass an exam that the legislature in the probation statute has declared unreliable.

In <u>Leonard v. State</u>, 385 S.W.3d 570 (Tex. Crim. App. 2012)[5] this Court held that use of failed polygraph evidence to discharge a probationer from treatment and thus cause him to be in violation of probation is not permitted. This Court declared that polygraph evidence is *unreliable*.[6] <u>Id</u>. at 577. This position of unreliability was affirmed recently in a slip opinion <u>Ex Parte Arnone</u>, WR-60,218-02 (Tex. Crim. App. October 7, 2015) (not designated for publication). The scientific unreliability of polygraphs was discussed at length in <u>Romero v. State</u>, 493 S.W.2d 206 (Tex. Crim. App. 1973), noting particularly that sources of error are not within the test subject's control. <u>Id</u>. at 210-211.

---

[5] It is worthy of note that Respondent was the presiding Judge in the <u>Leonard</u> case where polygraph evidence was the basis for imprisonment of the Relator. Respondent in that case expressed great concern should polygraph evidence not be permitted to incarcerate probationers. <u>Leonard</u> at 574.

[6] "The history of this Court's dealings with polygraph evidence is long but not very complicated. For more than sixty years, we have not once wavered from the proposition that the results of polygraph examinations are inadmissible over proper objection because the tests are unreliable." <u>Leonard</u> at 577.

*Intermediate Sanction Facilities*:

Respondent's proposed incarceration order is to impose a sanction. The fact that this sanction of deprivation of liberty is not revocation of probation is a distinction with little meaning to Relator. The loss of liberty, albeit perhaps more brief in duration than imprisonment is nonetheless a sanction for failing an unreliable test. The available official government literature concerning the proposed order to incarceration at an Intermediate Sanction Facility confirms that the incarceration is a sanction for those in violation of their probation conditions.

The name of the facility notes its purpose which is as a "sanction." The official literature describing Texas' Intermediate Sanction Facilities shows that the use of this sanction is not appropriate for Relator. According to State Contracted Intermediate Sanction Facility Policy and Procedure Eff. June 5, 2009. "ISF's provide an intermediate sanction to revocation that removes the offender from the community. These intermediate sanctions address community supervision violations as well as sanction criminal conduct that can best be addressed by custody that offers cognitive or substance abuse treatment... to give the courts an incarceration option other than revocation." The target population does not include

7

someone in Relator's circumstances as he is not in violation[7] of his conditions of supervision and he does not have a history of absconding or treatment nonparticipation. (p. 3 of 16). The offender must be assessed as high-risk and medium or high-needs on the Wisconsin risk assessment or other validated assessment of risk and need.[8] (p. 4 of 16).

According to Texas Intermediate Sanctions Bench Manual "Intermediate Sanction Facilities (ISFs) are shorter-term detention facilities that target offenders who violate their community supervision. An ISF is an option to revoking an offender's supervision and sending him or her to prison. ISF services include education, cognitive restructuring skills, life skills training, and community service restitution."

In these circumstances, Relator has no other adequate remedy at law other than relief obtained in this writ of prohibition. Respondent's proposed deprivation of Relator's liberty interest based on prohibited polygraph evidence demonstrates that Relator has a clear right to the relief sought. Curry v. Wilson 853 S.W. 2d 40, 43-44 (Tex. Crim. App. 1993).

---

[8]    Relator has been determined by his sex offender treatment providers to be low risk.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, RELATOR prays that this Honorable Court grant his Application and issue and order conditionally granting his writ of prohibition and for such other and further relief to which he may be entitled.

Respectfully submitted,

/s/ Wes Ball
WES BALL
4025 Woodland Park Blvd.
Suite 100
Arlington, Texas 76013
Email: WBnotices@ballhase.com
Telephone: (817)860-5000
Fax No.: (817)860-6645
State Bar No. 01643100

ATTORNEY FOR RELATOR

# OATH BEFORE A NOTARY PUBLIC[9]

STATE OF TEXAS      §

                           §

COUNTY OF TARRANT      §

Wes Ball, being duly sworn, under oath says: "I am the attorney for Relator Kevin Richard Joliet and thus the Petitioner in this action. I know the contents of the application for writ of prohibition and according to me belief, the facts as stated in the application are true."

/s/ Wes Ball_____
Signature of Petitioner

Subscribed and Sworn to Before Me this 2nd day of December, 2015.

/s/ Malinda Davis_____
Signature of Notary Public



MALINDA A. DAVIS
MY COMMISSION EXPIRES
December 22, 2018

---

[9]     "The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction." Article 5, §5 Texas Constitution

# CERTIFICATION OF COMPLIANCE AND DELIVERY

This is to certify that: (1) this document, created using Microsoft Word software contains 1165 words, excluding those items permitted by Rule 9.4(i)(1), Tex. R. App. Proc., and complies with Rules 9.4(i)(2)(B) and 9.4 (i)(3), Tex. R. App. Proc.; and on December 2, 2015, a true and correct copy of the above and foregoing "Application for Writ of Prohibition" was transmitted to the Honorable Mollee Westfall and the Honorable Charles Reynolds, counsel for the Judicial Staff Counsel in Tarrant County, Texas.

/s/ Wes Ball
WES BALL
Attorney for Appellant

11

# Exhibit "A"

| | NO. 1306409 | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 371st DISTRICT |
| VS. | )( | COURT OF |
| KEVIN RICHARD JOLIET | )( | TARRANT COUNTY, TEXAS |

### SUPPLEMENT / AMENDMENT TO CONDITIONS OF COMMUNITY SUPERVISION

Participate in and successfully complete the program(s) and/or condition(s) indicated below, pay all fees required, and continue to participate and/or comply until released by the court:

1.    Complete all requirements of a sex offender treatment evaluation within sixty days as directed by the supervision officer. Attend and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the Court or the supervision officer.
Pay all costs of evaluation, counseling, treatment and aftercare. Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.
The Defendant is to re-start treatment & evaluations with Michael Strain and Associates.

2.    Within 30 days submit to, pay all costs for, and show no deception on a maintenance polygraph retest.

Judge

I have received my conditions of community supervision.

Witness: Supervision Officer

Defendant

7/6/15

Date

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

JUL 06 2015

TIME_____10:51
BY_____ DEPUTY

NO. 1306409

| THE STATE OF TEXAS | )( | IN THE 371st DISTRICT |
| VS. | )( | COURT OF |
| Kevin Joliet | )( | TARRANT COUNTY, TEXAS |

FILED
THOMAS A WILDER, DIST CLERK
TARRANT COUNTY, TEXAS

MAR 17 2014

TIME _12:10_

BY _____ DEPUTY

## SUPPLEMENT / AMENDMENT TO CONDITIONS OF COMMUNITY SUPERVISION

Participate in and successfully complete the program(s) and/or condition(s) indicated below, pay all fees required, and continue to participate and/or comply until released by the court:

1. Assume responsibility for your offense.

2. ~~Comply with sex offender registration procedures as required by the laws of this State and of any other State and pay any costs thereof as required by law.~~

3. Complete all requirements of a sex offender treatment evaluation within sixty days as directed by the supervision officer. Attend and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the Court or the supervision officer. Pay all costs of evaluation, counseling, treatment and aftercare. Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.

4. Remain within and maintain permanent residency within Tarrant County unless the court or supervision officer authorizes you to leave or relocate.

5. Do not engage in any lewd or lascivious act in public view that is likely to alarm or offend another individual.

6. Submit to, pay all costs for, and show no deception on any polygraph examination and other diagnostic test(s) or evaluation(s) as directed by the Court or supervision officer.

7. Pay the costs of any medical, psychological or other evaluation, counseling, and treatment incurred by the victim(s) with prior approval of the Court.

8. Do not contact _____ in any manner including, but not limited to: in writing; in person; by phone; passing by his/her residence, school, area of recreation, place of employment; or through third parties.

9. Do not go on the premises of or patronize any sexually oriented establishments.
Do not exchange goods or money for sexual activity.

10. Do not possess, own, distribute, purchase, or view any book, publication, or image in any form that depicts nudity of adults or children, including images which display uncovered breasts, buttocks, or genitals.

11. Do not possess, own, distribute, purchase, or view any book, publication, or image in any form which depicts or displays simulated sexual acts.

12. Do not purchase, possess, access, or view sexually explicit visual or audio material on any medium. Install and activate, at your own cost, software capable of blocking access to sexually explicit material on any personal computer in your residence. Permit access by the supervision officer, at any time, to any personal computer in your residence to monitor compliance with the above.

13. Do not possess, own, or operate any computer, at any location, that has access to the internet without first installing RemoteCom monitoring software. Fully participate in and comply with the rules and requirements of RemoteCom monitoring services, pay all fees required and continue to comply until released by the Court.

14. Do not possess, own, or operate any computer that has installed wiping software or encryption software capable of preventing forensic software from accessing viewed images, text, or files that may reside on any computer medium.

NO. 1306409

15.  Do not access, view, or create any internet chat room, message board, blog, or any social networking website, including but not limited to Instagram, YouTube, Twitter or Facebook.

16.  Inform your supervision officer of any email address, social networking identity, and any other internet identity you have used in the last two years, as well as any that you acquire while on community supervision.

17.  Do not purchase, possess, access, own, or operate any gaming system capable of internet access, including but not limited to Xbox, Xbox360, PlayStation 3, or Nintendo Wii.

18.  Do not purchase, possess, access, own, or operate a cell phone that is capable of internet access without first installing RemoteCom monitoring software. Fully participate in and comply with the rules and requirements of RemoteCom monitoring services, pay all fees required and continue to comply until released by the Court. Permit access by the supervision officer at any time to any cell phone in your residence, vehicle, or on your person to monitor compliance with the above.

19.  Abstain from the use, possession or consumption of any alcoholic beverage and submit to testing for alcohol use.

20.  Comply with a curfew as directed by the court or supervision officer.

21.  Pay a sex offender fee of $5.00 each month during the period of supervision.

22.  Submit a blood sample or other specimen to the Texas Department of Public Safety, or a local agency approved by the Court, within 30 days of the date of community supervision.
Pay any and all costs associated with the submission of blood or other specimens.

## CHILD SAFETY ZONES

23.  Do not supervise or participate in any program that includes as participants or recipients persons who are 17 years of age or younger (a child) and that regularly provides athletic, civic, or cultural activities

24.  Do not go in, on, or within 1,000 feet of a premise where children under 17 years of age commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility.

25.  Do not accept or maintain employment which will bring you into direct contact with any child, under 17 years of age, unless approved by the Court or supervision officer.

26.  Have no contact with any child under 17 years of age unless a chaperon approved by the Court or supervision officer is present.

27.  Do not reside in a household where any child under 17 years of age lives unless approved by the Court or supervision officer.

28.  Do not display or allow to be displayed on or about the exterior of the premises where you reside any form of holiday or festive decoration or ornamentation that would be reasonably likely to attract persons who are under 17 years of age or younger.

Judge

I have received my conditions of community supervision.

Witness: Supervision Officer

3-17-14
Date

Defendant

371st Sex Offender Conditions